MARSHALL FIELD & CO. et al. v. PEARSON.

CITIZENS' NAT. BANK OF LUBBOCK v. SAME.

No. 5861.

Circuit Court of Appeals, Fifth Circuit.
April 8, 1931.
Rehearing Denied May 1, 1931.

Allen Wight, of Dallas, Tex., and Robt. A. Sowder and E. L. Klett, both of Lubbock, Tex., for appellants.

Richard L. Douglas, of Lubbock, Tex., and L. S. Kinder, of Plainview, Tex., for appellee.

Before BRYAN and FOSTER, Circuit Judges, and HUTCHESON, District Judge.

HUTCHESON, District Judge.

Bob Barrier, Paul Barrier, Mike Barrier, and Clifton Barrier, constituting the partnership of Barrier Bros., and each individual composing the partnership, were upon their voluntary petition adjudicated bankrupt in May, 1929.

The appellant Marshall Field & Co., five other mercantile creditors, and the Citizens' National Bank, the latter prosecuting a separate appeal, filed proofs of claim against the partnership; the mercantile creditors claiming upon guaranties given by Barrier Bros. the partnership, and certain deeds of trust and chattel mortgages given by the partnership to secure the same; the Bank claim-

ing upon three notes of Barrier Bros., Inc., two of them indorsed by the partnership, and all of the notes, as they claimed, secured by deed of trust.

These claims, contested by the trustee, were disallowed by the referee as either secured or unsecured claims against the partnership. The District Judge approved the action of the referee in disallowing all the claims as secured, and his action in disallowing them as unsecured, except that he allowed the claim of the Citizens' National Bank on the two notes indorsed by the partnership, and the claims of Marshall Field & Co., Perkins Dry Goods Company, and Keith Bros. & Co. on a small portion of their claimed indebtedness as unsecured. From the action of the District Judge this appeal is prosecuted.

By a frictional approach to the consideration of this case begun before the referee through and as the result of an effort to disqualify him because of his statutory commissions, and maintained throughout, which has generated more heat than light, the issues in it have assumed aspects of difficulty which a less intense approach to it discloses are more apparent than real.

Simply stated, this case is one in which four brothers, who had for many years been partners in a mercantile business, desiring to expand that business, formed a corporation, and turned over to it their mercantile business. The partnership, which had acquired real estate and other assets in the name of one of the partners, not dissolving, but continuing thereafter to exist as such, retired from the active conduct of the business, but continued to give its credit and the activities of its members to building up the corporation's business.

Some of the appellants, mercantile creditors, had in 1928, almost immediately after the corporation had taken over the partnership business, secured from the partners instruments guaranteeing or agreeing to guarantee the corporation's debts, while on November 3, 1928, Bob Barrier, as president of Barrier Bros., Inc., wrote Marshall Field & Co., in reply to its complaint that the business had been incorporated without its knowledge, that what they had in effect done was to segregate their merchandising operations from their other businesses, concluding, "Legally you have not released one single piece of real estate, notes or any part of our merchandising operations, and the same assets which we (referring to the partnership) listed on January 1st are still intact."

Perceiving on too large a scale the opportunities which lay before them, the partnership enlarged its periphery of distribution at the expense of its center of gravity, credit, to such an extent that though remaining solvent, credit difficulties began to confront them, and in the early part of 1929 extended negotiations were begun and carried on by the Barriers, through Bob Barrier, the president and guiding spirit of the corporation and partnership, looking to a reorganization of the business, but on a sounder and more reliable basis of capitalization.

In the course of and to carry out their agreements made while these negotiations were going on, Barrier Bros., on the 11th of April, executed to George R. Bean, trustee, for the use and benefit of the appellants, merchandise creditors, two chattel mortgages and one real estate mortgage, and on the 25th of April executed a real estate mortgage on additional property.

The real estate mortgages, as they appeared in the proofs of claims showed as grantee, in addition to the six merchandise creditors, appellants, the name of the Citizens' National Bank. The testimony showed as to the mortgage of April 11 that the bank's name was inserted as grantee while the instrument was in the clerk's office after its filing for but before its recordation. This insertion was made with the express consent of Paul, in whose name the land stood, and of Bob Barrier, the managing partner who had general authority to sign Clifton's name.

Clifton testified that he knew when he signed the schedules that the bank was included in the deed of trust. The other partner, Mike Barrier, testified that he had not been told and did not know that the bank's name had been added to the deed of trust.

The referee finding that the guaranties were the guaranties of the individuals composing the partnership and not of the partnership, allowed the claim primarily against the individual estates and only secondarily against the partnership estate. He also found that, if intended to be executed by the partners, they were invalid for want of consideration moving to the partnership.

He also disallowed the securities on the ground that they were invalid as voluntary conveyances under the Texas statutes and also they were invalid as unlawful preferences under section 60b of the Bankruptcy Act (11 USCA § 96(b).

These conclusions were in substance sustained by the District Judge, and the action

of the referee, except as above noted, was confirmed.

In this we think the court erred. On the first point as to the intention of the guarantors, it is perfectly clear that they intended to place the partnership credit and the partnership assets back of the corporation's debts. The corporation derived from them; it was their creature, and, as to the merchandise business, their alter ego. They had assured Marshall Field & Co. in the letter above referred to, and the other creditors in the instruments they gave them, that every asset of the partnership was back of the corporation, and as to this Bob Barrier testified: "I felt like on November 3rd that Mr. Williams still had his claim intact against the partnership assets, and that was what we intended for him to have, but Mr. Williams was not satisfied with the letter. He knew that we kept this property in the names of the individuals but operated as a partnership. We wanted to satisfy Marshall Field & Co. as best we could and we prepared the statement of the partnership assets and signed the guaranty. In executing the guaranty we did it so that Marshall Field & Co. could have the benefit of the partnership and be protected by the partnership property, that was the purpose of it. We knew that that was Mr. Williams' idea at that time."

█ It is perfectly plain that in executing all of these instruments the partners intended to pledge the credit and assets of the partnership to insure the carrying on of its business now being transacted in the name of the corporation, whose entire stock the partnership owned, as fully and to the same extent as though the partnership were still conducting the business, and that what they did was effective to carry out this intention.

█ As to the securities, we think it equally plain that there is no basis for the finding of the referee either that these mortgages were void as voluntary conveyances, or that they constituted preferences. They were given as part of the plan then on foot for the handling and conduct of the business, supported by the valuable consideration of the promise to help by the extension of the debts then due, and the providing of further credit, and, while there is ample evidence that the corporation was in an embarrassed condition for want of funds, the evidence wholly fails to sustain the conclusion that the corporation and the partnership were insolvent within the meaning of the law, or, if they were, that the creditors securing the mortgages received them under such circumstances as that it could be found that they had reasonable cause to believe that a preference would be effected. Grant v. First National Bank, 97 U. S. 80, 24 L. Ed. 971; In re Gaylord (D. C.) 225 F. 234.

The notes on which the bank claimed were notes of the corporation, two of them guaranteed by the partners, one not, and the bank stands in the same case as to the right to the securities claimed as the other creditors, except for the point made against it by the trustee, that it was not an original grantee in the mortgages, but its name was inserted therein after the instruments had been executed and delivered to the grantees. [3, 4] The proof does establish that as to the mortgage of April 11th the bank's name was inserted as grantee after execution and delivery and filing for record, and, while as to that of April 25th the proof is wanting in certainty, there is sufficient evidence to sustain the finding that this instrument was also executed and delivered, though not filed for record, before the bank's name was inserted in it. In order then for the bank to avail itself of the securities, it must have sustained the burden thus cast upon it of proving that, though inserted after execution and delivery, it was done with the consent of the partners in such manner as to make it their act and deed. This we think the bank has done.

There is no question here of fraudulent spoliation as in Bowser v. Cole, 74 Tex. 222, 11 S. W. 1131; rather this is a case like that of Otto v. Halff, 89 Tex. 384, 34 S. W. 910, 59 Am. St. Rep. 56, where the insertion was innocently made by the bank with the knowledge and consent of the partner in whose name the land stood, the managing partner and moving spirit of both corporation and partnership, and, if not in service, it was certainly not in disservice of the partnership, as it merely had the effect of including in the instrument another creditor who had advanced money to the corporation on the faith and confidence in its managing owners, the partners themselves.

█ That an instrument, though changed after filing and before recordation, will stand as recorded when the change is made with the consent of the grantor is settled law in Texas. Henke v. Stacy, 25 Tex. Civ. App. 272, 61 S. W. 509. Nor is there any question but that, though one partner has no implied general power to sell or mortgage real estate of a firm, a conveyance so made will be good against the interest of the partners making it and against the interest of the other part-

488

ners, upon proof from which either authorization or ratification may be inferred. Allen v. Meyer (Tex. Civ. App.) 65 S. W. 645; Williams v. Meyer (Tex. Civ. App.) 64 S. W. 66, 69.

The record in this case shows affirmatively that Bob Barrier, the managing partner, Paul Barrier, in whose name the greater part of the land stood, and Clifton Barrier, all agreed to the insertion of the bank's name in the instruments. While there is no direct evidence that Mike Barrier either authorized or ratified the act of the other partners in including the bank in the instruments, in view of the nature of the partnership, its relation to the corporation, the fact that its properties stood in the name of the individual partners who did assent to the inclusion of the bank, the negotiations that had been going on for some time, to which the bank was a party, which negotiations were conducted by Paul and Bob Barrier, the fact that the inclusion was in line with the general purpose of the instruments, to protect creditors who had made advances to the corporation upon the faith of the credit of the partnership, and to secure an extension of time on that indebtedness and further credit, the evidence is sufficient to support the finding that the insertion of the bank's name was the act and deed of the partners which their trustee cannot disaffirm, and that the claim of the bank, as well as the other appellant creditors, should be approved as a secured claim against the partnership estate.

The judgment of the court below is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.