## BUTLER v. ABILENE MUT. LIFE INS. ASS'N.

### No. 1681.

Court of Civil Appeals of Texas. Eastland.

June 18, 1937.

Rehearing Denied Sept. 10, 1937.

Smith & Smith, of Anson, for appellant.

Childers & Shaw, of Abilene, for appellee.

FUNDERBURK, Justice.

This is a suit by Creola Butler against the Abilene Mutual Life Insurance Association to recover upon a policy of life insurance issued to Jess Butler, deceased, in which plaintiff, as his wife, was named beneficiary. Upon a jury trial, judgment, based upon a special verdict, was rendered for defendant, from which plaintiff has appealed.

The case was submitted to the jury just before the court recessed for noon, about 12:05 p. m. The court had instructed the jury that they could meet back at the jury room for deliberation about one o'clock. The jury did not reconvene until one o'clock. During the time intervening from the adjournment to the time the jurors were to reassemble in the jury room, the judge, although absent from the courtroom, was in town and easily accessible to any of the parties to the suit.

These facts and those hereinafter stated relate to the single question presented for our decision. The question is: Did the court err in overruling plaintiff's motion for new trial on the ground that the jury took with them in their retirement two depositions of witnesses contrary to the provisions of R.S.1925, art. 2193?

The action of the court in overruling the motion for a new trial could have been based upon at least three possible grounds, namely: (1) That the jury did not take the depositions with them in their retirement; or (2) if so, it was affirmatively shown beyond a reasonable doubt that no prejudice to plaintiff resulted from such action; or (3) that by failure of plaintiff to make timely and proper objection such ground for a new trial was waived.

We may safely assume, we think, that the action of the court was not based upon either the first or second of said grounds. The evidence was undisputed and conclusive that the jury had two depositions with them in the jury room, and that one or more of the jurors read a part of same relating to at least one of the submitted issues. The statute was violated. The prejudicial effect

of such violation is presumed in the absence of facts showing affirmatively and conclusively that there was no harmful effect. Bell v. Blackwell (Tex.Com.App.) 283 S. W. 765, 767; Putnam Supply Co. v. Chapin (Tex.Civ.App.) 45 S.W.(2d) 283; Bassmer v. Kotulek (Tex.Civ.App.) 75 S.W.(2d) 295. There can be no valid contention, we think, that the record in this case affirmatively shows that plaintiff was in no way prejudiced by the action in question.

It remains to consider whether there was evidence to support a conclusion that plaintiff, through the conduct of her counsel, waived the right to urge such ground for a new trial.

In addition to the facts first above stated, the only evidence of possible relevancy and material to the question of waiver— disregarding all evidence, if any, to the contrary—was to the effect that the jury did not go directly to the jury room; that before leaving the courtroom for lunch, one juror (inexperienced in jury service) picked up from the court stenographer's table certain papers, including, with those about which no question is made, two depositions which had been introduced in evidence. At that time the judge had gone from the courtroom. Mr. Childers, attorney for defendant, and Gilbert Smith, one of the attorneys for plaintiff, were in the courtroom, but not close to the table. Childers knew the papers, including the depositions, were taken and told the juror that so far as he was concerned it was all right. There was no evidence that Gilbert Smith heard, or was in such position as presumably to have heard, the conversation of the juror and/or Mr. Childers relative to the depositions, unless the mere fact that he was in the courtroom was evidence. There was no other evidence that he knew the depositions were being taken by the juror. Just after the juror had gone, another attorney of the plaintiff was advised that the juror had the depositions. No objection was ever made. The juror who took the depositions looked at them awhile before he left with them. There was no evidence as to whether the same juror read further from the depositions before the jury reassembled in the jury room, or that any other juror did so.

We shall assume without deciding that had the judge, with the knowledge of plaintiff's attorneys, expressly given permission for the jury to take the depositions with them, such circumstances would have imposed upon plaintiff's attorneys the duty of making objections, subject to the penalty, for failure to do so, of a waiver of the right to complain of such action. If so, the reason, we think, to support that proposition would be that such circumstances would imply the *consent* of plaintiff to such action and estop her thereafter to complain. In other words, in legal contemplation she would by her implied consent have invited or induced the court to commit the error and therefore have rendered it inequitable for her to take advantage of it.

■ In this case no action or ruling of the judge caused, or contributed to cause, the illegal possession of the depositions by the jury. Nothing the judge did or failed to do was subject to objection. The question arises, then, could the absence of objection reasonably imply *consent* to a clear violation of a mandatory statute? It seems to us that consent could not reasonably be implied from the circumstances stated.

■ The question at issue must, we think, be regarded as one coming within the general classification of misconduct of the jury. Acts or omissions of the jury, however, improper or illegal, are subject to correction and revision only by the trial court. They must in some way be ruled upon by the trial court, and such ruling, not the misconduct, becomes the ground of error to be reviewed upon appeal. As well said in Bell v. Blackwell, supra: "No appellate court would think of reversing the trial court for an improper argument of counsel or for misconduct of the jury or any other act *not of the court himself,* without in some way calling the matter to the attention of the trial court and *procuring his ruling thereon.* The complaint therefore is at last based upon the *ruling of the court,* whether that ruling occurs immediately upon the happening of the event or later upon the *motion for new trial.*" (Italics ours.)

Generally, if not always, the first opportunity to present to the trial court, for its ruling, a question of misconduct of the jury, is in a motion for new trial. We are to consider whether this case presents an exception.

■■ To get at once to the very heart of the problem, we may propound this query: Plaintiff having, through her attorneys, acquired knowledge that the jury would probably violate the law by taking the depositions with them in their retirement for deliberation, was it her duty, by her attorneys, to employ all reasonably available means to

forestall such action? Did plaintiff's attorneys owe the duty to their client to go in search of the judge, while off the bench, to the end that the court might be reconvened in advance of the time of convening of the jury, for the purpose of making such orders or taking such action as deemed requisite to prevent such probable violation of the law? In this case it happened that the judge was in town and easily accessible to any of the parties. Is the question to be controlled or materially affected by that fact? Suppose the judge had gone to his home in Abilene, yet by great diligence on the part of plaintiff's counsel he could have been summoned to return in time? Suppose the first information of counsel that the jury had the depositions had come so soon after they had reassembled as to render it problematical whether any damages had then been done, what would have been the duty of counsel under those circumstances? In the instant case the spirit of the law had already been violated at the time plaintiff's attorney was informed that a juror had taken the depositions with him. The undoubted purpose of the law is to forbid that jurors have any of the evidence in a case emphasized by re-reading depositions, except under the conditions and in the manner prescribed by statute. This reason or purpose would apply to any juror at any time or place before the rendition of a verdict.

The juror who took the depositions was asked: "Did you leave the court house immediately after you got the depositions? A. I looked at them a while when I was standing there." He said he sat around in the courthouse about fifteen minutes before the jury reconvened, but whether he or any of the other jurors read the depositions any more, the evidence does not show. Should the decision of this case be made to turn upon this particular state of facts, thus distinguishing it from other cases in which a similar question may be presented? Enough has been suggested by these questions to indicate that if any such duty exists as that stated in the above query, many difficult questions would arise under varying circumstances. We believe it to be the more reasonable view, more in consonance with orderly procedure, that the right to seek relief from misconduct of the jury is not waived under the circumstances of this case. It seems to us that the failure to seek out the judge off the bench, to report an impending condition prohibited by law which neither the judge nor counsel have contributed to bring about, cannot be said to reasonably imply consent to such violation of law.

It is therefore our conclusion that the judgment of the court below should be reversed and the cause remanded. It is accordingly so ordered.