Myrtle B. Sowell FENN et vir, Appellants,

v.

Howard E. BOXWELL, Appellee.

No. 6761.

Court of Civil Appeals of Texas.

Amarillo.

April 7, 1958.

Rehearing Denied May 5, 1958.

Herbert C. Martin, Amarillo, for appellants.

Monning & Monning, Amarillo, for appellee.

CHAPMAN, Justice.

This suit was first instituted as a Bill of Discovery by Mrs. Myrtle B. Sowell Fenn and husband, R. J. Fenn against Howard E. Boxwell under Rule 737, Texas Rules of Civil Procedure. Later the pleadings were amended and alleged trespass to try title, followed by pleas for cancellation and rescission of a deed from Mrs. Myrtle B. Sowell to Howard E. Boxwell while she was a single person, that certain contracts, together with said deed, should be cancelled and held for naught because of lack of mental capacity on the part of Mrs. Sowell at the time she executed them, and because of the exercise of undue influence by Howard E. Boxwell over Mrs. Sowell at said times. Appellants also pleaded both actual and exemplary damages against appellee for

malicious and wanton interference, disturbance and annoyance, but never sought any submissions under such latter allegations and seeks no relief in this court for failure to submit issues thereon. Appellee sought judgment validating his title to the property in controversy, subject to Mrs. Sowell's life estate.

The property in controversy is known as the Plaza Hotel property located at 910 Tyler Street, Amarillo, Texas.

The case was tried to a jury and every issue submitted was answered against appellant and favorable to appellee. In said answers the jury found (1) Mrs. Sowell executed and delivered the contract of February 21, 1956; (2) at said time she was not mentally incapacitated to the extent that she was unable to understand and comprehend the nature and effect of such instrument and of her act in executing and delivering it; (3) at said time she was not acting under mental duress by Howard E. Boxwell; (4) she was not caused to execute it by the exercise of undue influence over her by Howard E. Boxwell; (5) she signed and acknowledged the "Correction Warranty Deed" identified during the trial as Defendant's Exhibit No. 12; (6) at the time she signed and acknowledged the "Correction Warranty Deed" she was not mentally incapacitated to the extent that she was not able to understand and comprehend the nature and effect of her act; (7) at the time she signed and acknowledged the "Correction Warranty Deed" she was not acting under mental duress by Howard E. Boxwell; (8) at the time she signed and acknowledged said deed she was not caused to do so by the exercise of undue influence over her by Howard E. Boxwell; (9) she executed the will referred to throughout the case as Plaintiff's Exhibit No. 6; (10) she was not mentally incapacitated at the time of executing the will to the extent that she was not able to understand and comprehend the nature and effect of the instrument and of her act in executing it; (11) at the time she executed said will she was not acting under mental duress by Howard

E. Boxwell; (12) at the time she executed said will she was not caused to do so by the undue influence of Howard E. Boxwell, and (13) at the time she executed the will she intended thereby to ratify the "Correction Deed." Judgment was accordingly rendered against plaintiffs, from which they appealed. The record having failed to establish that R. J. Fenn owns any interest in the property in controversy, the parties will hereinafter be referred to as appellant and appellee.

On May 19, 1955, Irvin Sowell, an only son of appellant, and his wife were both killed in an automobile accident on the highway between Amarillo and Dumas. Howard E. Boxwell, appellee, of Boxwell Bros. Funeral Home handled the funeral services for appellant's son and daughter-in-law and was paid for the services by Mrs. Irvin Sowell's son by a former marriage, Roy Lusk. On July 21, following the funeral services aforesaid, appellant deeded to appellee her Plaza Hotel property at 910 Tyler in Amarillo for certain considerations that will be later more fully described. The deed provided:

"It is distinctly understood that the grantor herein is excepting and reserving from this conveyance all of the rent and revenues from the property herein conveyed as long as she may live and the grantor is to pay all taxes, insurance and repairs during the time she has the occupancy, possession and is collecting all the rents and revenues from the property.

"It is understood that there is an outstanding deed of trust lien against this property in favor of the First Federal Savings and Loan Association of approximately $24,600.00 evidenced by a note payable to its order and this property is taken subject to such outstanding indebtedness."

By mistake of the scrivener the hotel property was described as Lot No. 3 in Block 102 of the Plemons Addition to the City of Amarillo, instead of its proper description

of Lot No. 3 in Block 122 of the Plemons Addition to the City of Amarillo.

It is uncontroverted in the record that appellant was deeply grieved and emotionally upset in the tragic death of her son and daughter-in-law, who had no children of their marriage. Appellee takes the position that appellant, having known him for thirty or more years, turned to him in her sorrow for solace and help. He alleged "that prior to the time the above deed was executed to him he had rendered valuable services to the cross-defendant, Myrtle B. Sowell Fenn over a period of many years, had been good and considerate to the last aforementioned cross-defendant and had rendered valuable consideration to her."

Appellant alleged that:

"The said plaintiffs would further show the court that at the time of the execution of the deed to the defendant, Howard E. Boxwell, and as shown in Vol. 708 on pages 515 of the Deed Records of Potter County, Texas, to which reference is made, the said Myrtle B. Sowell Fenn had been *severly* ill and had been suffering from shock due to the loss of her only son in a tragic automobile wreck and she was required to remain constantly in bed and under the care of a physician; that due to her illness; advanced age and mental incapacity she was not mentally able to understand and comprehend the nature and effect of the deed and the consequences of her act when she signed it, and that such deed was void by reason of such mental incapacity of the grantor at the time she executed the said deed."

She further alleged, in substance, that the contract executed between the parties of even date with the deed above described was executed under the same conditions, the two constituted one instrument and both are void because of material alterations, by reason of undue influence being exercised over her, and because of mental incapacity of appellant at the time.

The contract between the parties of July 21, 1955, also contained the same mistake of the scrivener in describing the property. In addition to the recitations of kindnesses and helpfulness of appellee to appellant and recognition of his helpfulness to her in various business affairs, he agreed in the contract whereby the hotel property was deeded to him that he would erect for her a private mausoleum in the Llano Cemetery, "Which mausoleum will be shelved for one entombment, shall be built either out of granite or marble, and shall be constructed out of such materials in a good, workmanlike manner, shall be approximately 6 feet wide, 10 feet long and 12 feet 8 inches high, from ground to roof peak, shall be constructed and completed in the usual and customary manner as such mausoleums are being presently constructed, and which shall, after being so built, bear the inscription of "Myrtle B. Sowell." Appellee also agreed, as additional consideration to furnish "a copper Broadmoor Merit Casket, No. 20–7000, triple sealer, which casket ordinarily sells at retail for between $7,000.00 and $17,000.00" and to furnish at his cost a plot in the cemetery named of sufficient size and dimension to construct and erect the above described mausoleum thereon, the plot to be purchased within 30 days from the date of the contract. The contract further provided appellant was transferring all her right, title and interest in and to all of the furniture and fixtures located in the above property, subject to her right to retain possession and the income and revenues therefrom as long as she lived.

The record shows that before the date of the execution of the deed and contract above described appellee, at his expense had, at appellants' request, taken her to Marlin, where she took the hot baths from July 1 to July 18th, then had gone down and taken her to Dallas where she met with the internal revenue department in an effort to get back some income taxes and penalties she had paid. She later received a refund of approximately $33,000.

The next morning after her return to Amarillo appellant, accompanied by appellee, went to the offices of Monning and Monning, Attorneys. The record indicates that because of some previous unpleasant experience Ben Monning, Sr. had had with appellant he refused to draw any instruments for her until he called in his secretary and questioned her in the presence of the secretary, Ben Monning, Jr. and appellee, with the conversation taken down in shorthand. With respect thereto, the Secretary, Mrs. Mary Ann Alexander testified:

"When you asked me to come into the office and bring my notebook, you told me that you had had some experience with her before and that you wanted to be sure that she did not want to back out of this as she had in some other cases you had had dealings with her or something along that line."

Mrs. Alexander further testified:

"Q. Now, as the questions were answered in the office, did you take her answer down just as she answered? A. Yes.

"The Court: You mean in shorthand, Mr. Monning?

"Q. In shorthand? A. Yes, in shorthand.

"Q. And then after it was taken down in shorthand, did you make a true transcription of it? A. Yes.

"Q. Was this question asked while Mrs. Sowell was in our offices along with Mr. Boxwell, my son, you and me; was this question asked? 'Now, Mrs. Sowell, you have asked us, of your own free will and accord to draw a deed to your property at 910 Tyler Street in the City of Amarillo, to Howard E. Boxwell, wherein and whereby you want him to take this property, subject to your retaining a life estate; that is, retaining all of the income off of this property as long as you live?' Did I ask that question? A. Yes, That question was asked.

"Q. Did Mrs. Sowell say: 'That is right. Yes, sir.'? A. Yes, sir.

"Q. Did I ask this question: 'Now, about the debt that is against it—do you intend to pay that debt that is against this property?' Did I ask that question? A. Yes, sir.

"Mr. Monning: 'Mrs. Sowell: Yes, sir. Out of the money I have coming back.' Did she make that answer? A. Yes.

" 'Coming back from the government?' a question by me.

" 'Mrs. Sowell: Yes, sir.' A. Yes, sir, those questions and answers were asked and given.

"Mr. Monning, Sr.: Now then I asked her this question: 'Now why do you want this deed drawn to Howard E. Boxwell—just in your own words?' Did I ask her that question? A. Yes, sir.

"Mr. Monning, Sr.: Now, 'Mrs. Sowell: It is because he had been better to me than anybody and he has looked after me, and I would have been dead if he hadn't taken me to Marlin and looked after me and gotten me well. And he took me to Dallas and got my money back. And he has always been good to me and is better to me than anybody else, over a period of 30 years.' Did she make that answer? A. Yes, sir.

"Q. Then I asked her this question: 'Then a part of the consideration for this deed that you have asked us to draw is in repayment for what he has done for you?' Did I ask her that? A. Yes.

"Q. And then she answered, 'Yes, and what he will have to do for me in the future.'

"And then the next question: 'And what he is to do for you in the future— that is to be evidenced by a contract to be entered into between you and Howard? A. Yes, sir.' A. Yes, sir.

"Q. Now then, this contract that you were just asked about, tell the jury whether or not after you took this down in shorthand, tell the jury whether or not while Mrs. Sowell was in our office, you took down dictation from me as to what was to be contained in that contract? A. Yes, sir.

"Q. Now then after you took that dictation from me, was Mrs. Sowell, while I was dictating it to you, was she in the office? A. At all times."

Appellee testified the first he knew of the mistake of description in the deed was when the abstractor called him and told him about it. According to his testimony he then went to see Mr. Monning and told him and then went to appellant. The deed was changed to the correct description before filing and appellee testified a mistake was made in the description of the property in the contract also and Mr. Monning changed it. On August 10, appellant executed a correction deed which recited:

"This deed is given in Correction of the warranty deed given by the grantor to the grantee dated July 21, 1955, and which is of record in Vol. 708, page 515 of the Deed Records of Potter County, Texas. The said former deed through oversight and mistake of the scrivener recited Block One Hundred Two (102) where in truth and in fact, the grantor did not own Lot Three in Block 102 of the Plemons Addition to the City of Amarillo but does own and did intend to convey and does herein by this correction deed convey Lot Three (3) in Block One Hundred Twenty-Two (122) of the Plemons Addition to the City of Amarillo * * *."

Following the execution of the correction deed appellant made some visits over the state. On the date of 10–23–55 she wrote appellee in her own handwriting a letter from Tyler, Texas, in which, among other things, she said, "I do not worry about my business for I know you are seeing that its run right. Howard, I appreciate you so much. Its such a consolation to have someone like you, honest and honorable, to lean on and someone that I know is going to do the right thing. And I do thank you from the bottom of my heart, thank for God having sent you to help me as you do." On the 12–10–55 from 910 Tyler Street she wrote him a letter thanking him for coming after her at Marlin and taking her to Dallas, for paying all the expenses of the trip, including her hotel room at the Adolphus and for taking her to see her lawyer and getting her in conference with the government men in an effort to get her money back after the government had fined her $56,800.80, thanking him again for taking care of her and assuring him she appreciated him so much that she was leaving him her property at her death. On February 12, 1956, she wrote Mr. Ben Monning a letter in her own handwriting explaining why appellee had not completed her mausoleum as the contract called for *when she deeded to him the Plaza Hotel at 910 Tyler Street,* and outlining to him a new agreement she and appellee had entered into and asking Mr. Monning to draw her a will, and in said letter named the beneficiaries and their specific legacies. (Emphasis supplied.) Then on February 21, 1956, appellant and appellee entered into a new contract which recited the contract of July 21 was to be changed by the new contract and that instead of appellee being obligated to furnish a plot of ground and erect a mausoleum he bound himself to (a) have the Southeast corner, ground floor of the Plaza Hotel property remodeled into a nice apartment and furnish same at his own cost and expense, the estimated cost being approximately $5,000; (b) to purchase a new 1956 air conditioned Ford sedan automobile; (c) pay off and discharge a note given by the party of the first part to the

First National Bank of Amarillo in the approximate sum of $1,300; (d) pay whatever judgment is obtained against her by Roy M. Lusk, her deceased son's stepson who had threatened to sue her for $4,372.98 claimed for auditing her income tax records and (e) to assign transfer and convey an undivided ½ interest in one certain Vendor's Lien and Deed of Trust note for the principal sum of $23,500 bearing interest at 5% and secured by 544.13 acres of land in Oldham County, Texas; (f) furnish a copper triple sealer casket which retails for between $7,000 to $17,000 for her funeral service.

In said contract it was agreed that a loan could be secured on the hotel property to pay for the remodeling provided for in (a) and that both parties would sign the note, since she owned the life estate and he the remainder. It was also agreed that her 1951 Cadillac might be used to trade in on the air conditioned Ford. This contract also recited that she had conveyed on the twenty-first day of July, 1955, by warranty deed, Lot 3 Block 122 of the Plemons Addition to the City of Amarillo, gave the volume and page number where it is filed in the Deed Records of Potter County, Texas, and referred to it by reference. On February 12, 1956, prior to the second contract just described appellant wrote in her own handwriting a "To Whom This May Concern" letter, also naming in the salutation her brother, her sister, her step-grandson and her ex-husband, R. J. Fenn and explaining why she was not leaving them any property and why she was leaving it to Howard E. Boxwell.

Later in 1956 appellant remarried R. J. Fenn, whom the record shows was an alcoholic and that she had divorced him in October 1954 because of cruel treatment toward her. She and Mr. Fenn went on a second "honeymoon" and soon after returning they went to see Mr. Sansing, an attorney of Higgins, Texas and employed him and the firm of Gibson, Ochsner, Harlan, Kinney and Morris, Attorneys of Amarillo to file suit to remove cloud from her title to the hotel property. On June 25, 1956, the petition for a Bill of Discovery was filed and on September 21, 1956, by agreement of the attorneys for both parties, depositions were to be taken of both appellant and appellee, the former to be taken first. In appellant's deposition she confirmed the deed of July 21, 1955, and testified that she intended to convey her Plaza Hotel property and confirmed the two contracts she had been a party to with appellee; emphasized many times how kind and considerate he had been to her; testified that Mr. Monning tried to get her to leave her brother and sister something and she refused because her sister was being better cared for than she and her brother would gamble and drink it up; that Mr. Fenn did not even come to the funeral of her son; that she filed the lawsuit "On account of that man I married. He kept on after me;" that she first went to Mr. Monning's office alone and told him she wanted to fix a deed to leave her property to Boxwell and he refused to fix it that day; and confirmed in her deposition that the original contract and deed had the wrong description, testifying in her own language as follows:

"Q. * * * Now that was block one hundred and two in the original contract? A. And you got it wrong.

"Q. And it should have been what? It should have been what instead of Block one hundred and two it should have been what? A. A hundred and twenty-two."

Appellant further testified in the deposition there was not any overreaching or any fraud connected with any of the transactions with Howard Boxwell, that he did not influence her and in the following language testified that she knew what she was doing when she executed all of the instruments:

"Q. * * * At the time that you signed that deed, do you claim that you were of unsound mind? A. No. If my body was as strong as my mind I would be a wizard."

After the deposition of appellant as taken her attorneys refused to take appellee's deposition and thereafter withdrew from the case. Appellant's present attorney filed the new pleadings and tried the case.

Throughout her brief appellant assumes that the trial court found the original deed of July 21, 1955 was void as a matter of law by reason of material alterations therein. She then asserts the court erred in thereafter submitting to the jury an entirely new cause of action based upon a correction deed. We do not find in the record any support for appellant's assumption that the trial court found the original deed void as a matter of law, in the sense that it could not be ratified and confirmed, and we believe the court would have been in error had it so held. After introducing the deed in evidence herself, appellant attempted later in the trial to withdraw it and the court refused the request. It is true no issues were submitted concerning appellant's mental incapacity or the exercise of undue influence on her by appellee at the time of the execution of the original deed but we do not find in the record any objection to the failure to submit such issues or any tender of any issues on the questions.

■ Failure to submit an issue shall not be deemed a ground for reversal, unless its submission, in substantially correct wording, has been requested in writing and tendered by the party complaining of the judgment. Rule 279, T.R.C.P. A litigant failing to object to submission of special issues waives them. Rule 272, T.R.C.P.; McCarver v. City of Corpus Christi, Tex., 284 S.W.2d 142; Lindler v. McClure, Tex.Civ.App., 292 S.W.2d 381.

Concerning the question of the deed being void it is said in 14–B Tex.Jur., Section 194, paragraph 1, page 655, "If the grantor, without court compulsion, executes a second deed containing a sufficient description, the correcting deed is effective between the parties as of the date of the earlier deed under the doctrine of relation back."

In Guitar Trust Estate v. Boyd, Tex.Civ. App., 120 S.W.2d 914, 919, the Court of Civil Appeals of Eastland, in a case where the conveyance called for the lots as being in Block 34 when they were in fact in Block 134 said: " * * * we are of the opinion that any reasonable interpretation of the testimony setting forth the circumstances surrounding and including the execution of the correction deed of May, 1937, conclusively establishes, when viewed from the standpoint of the appellees, that said deed of correction amounted to a complete ratification of the deed of January 16, 1937, the deed reciting the $125 consideration and containing the wrong block number."

In Marshall Field Co. v. Pearson, 5 Cir., 48 F.2d 485, 487, the Fifth Circuit Court, speaking through Judge Hutcheson, said, "That an instrument, though changed after filing and before recordation, will stand as recorded when the change is made with the consent of the grantor is settled law in Texas."

In Matson v. Jarvis, 63 Tex.Civ.App. 376, 133 S.W. 941, at page 944, the Galveston court said: "It seems to be well settled that a party to an instrument may ratify or consent to an alteration of it after it has been made, without a new consideration therefor."

This court, in an opinion by Chief Justice Pitts, in Taylor Const. Co. v. Clynch, Tex. Civ.App., 196 S.W.2d 700, 702, has said, "It is likewise well settled that a material alteration of a contract already made may be subsequently ratified and adopted and in such instances such instrument as altered will be binding upon the parties."

■ It is uncontradicted that the error of description in the instant case was the failure of the scrivener. Twenty days later appellant executed the correction deed which recited it was to correct the description erroneously used in the first deed, seven months after the execution of the first deed she signed a contract which specifically stated that on July 21, 1955, she had deeded

Lot 3 Block 122 of the Plemons Addition to the City of Amarillo and fifteen months after the first deed was executed, by deposition, she testified in effect, that she deeded the property to appellee, that Mr. Monning made a mistake in the description and that she still wanted appellee to have it under the conditions by which they had traded with each other. Under these facts, and the authorities cited, we would have to say the original deed was ratified and confirmed by the correction deed. The question then presents itself as to whether the second or correction deed was properly admitted in evidence.

■ Appellee takes the position in his brief that (1) the suit was in trespass to try title so the correction deed was admissible under a general denial and plea of not guilty and (2) it was admissible under his plea of ratification and confirmance. To the trespass to try title contention we cannot agree. Even if it be said that appellant pleaded a formal trespass to try title she continued to plead in detail, without doing so in the alternative, the grounds upon which she relied to set aside the original deed. Additionally, appellee pleaded in detail his allegations under which he sought to show validity of the original deed. Under these conditions the case did not constitute a formal trespass to try title such as to justify the admission of the second deed under a mere plea of not guilty and general denial. Custard v. Musgrove, 47 Tex. 217; Ulmer v. Ulmer, 139 Tex. 326, 162 S.W.2d 944; Poth v. Roosth, 146 Tex. 7, 202 S.W. 2d 442.

In pleading his title to the hotel, subject to appellant's rights to the rents and revenues during her life, appellee alleged, "The defendant represents the true facts to be that this woman plaintiff thoroughly understood and knew the effects of the contracts signed by her and of the deed, and knew that she had only one Plaza Hotel and that same was being deeded to this defendant for a valuable consideration, and *she ratified and confirmed such conveyance.* (Emphasis added.) Appellee, at the time of the

tender of the evidence of the correction deed and the objection thereto, asked leave of the court to file a trial amendment, but finding no trial amendment in the record concerning the correction deed it is presumed appellee decided to rely on his former pleadings. So the question here presented is whether such pleading is sufficient under which to admit the correction deed to show ratification and confirmance of the deed in which the scrivener described the wrong block number.

■ The modern tendency is toward liberality in the construction of pleadings in order not to require the retrial of a case, where the parties understood what the pleadings in issue were and where the same were submitted to a court and jury. Lindsey v. State, Tex.Civ.App., 194 S.W.2d 413.

■ Had a special exception been leveled at the failure of the pleadings to be more specific in the allegation that she ratified and confirmed the conveyance or had appellant asked for continuance for surprise we believe the trial court may have been in error. In the absence of either, we hold the admission in evidence of the correction deed was not error. Even if error it would not justify reversal if there was other admissible evidence in the record of subsequent instruments showing appellant had ratified and confirmed the conveyance, and we believe there is such other evidence.

Appellant herself introduced in evidence the second contract executed on February 21, 1956, seven months after the deed was executed in which the scrivener made the mistake in the description. In such contract she recited that she had, on July 21, 1955, conveyed by warranty deed Lot 3 in Block 122 of the Plemons Addition to the City of Amarillo and referred to the volume and page of the deed record showing the deed to Howard E. Boxwell. In Glasscock v. Farmers Royalty Holding Co., 152 F.2d 537, 540, the Fifth Circuit Court had before it a case where deeds, when filed, acknowledged and delivered to the Notary Public, contained no description whatever, and the de-

scription appearing in them when recorded was inserted later by the grantees or by their authority. The record in that case shows that some years after the two deeds in question were placed of record, Herder, under whom plaintiff was claiming, joined with the grantees in the deeds in a mineral lease on the property described in them, and in that lease he affirmatively declared that the mineral deed in question had been legally and validly executed and that they conveyed to the grantee the mineral interest claimed by them under the deeds. Then the court in that case, speaking again through Judge Hutcheson said, "It is settled law in Texas that the execution by the grantor in questioned instruments of later instruments, recognizing the prior instruments as valid and effective, operates as a complete ratification and validation of them, whether as originally executed they were void or voidable," citing Grissom v. Anderson, 125 Tex. 26, 79 S.W.2d 619; Humble Oil & Refining Co. v. Clark, 126 Tex. 262, 87 S.W.2d 471; Greene v. White, 137 Tex. 361, 153 S.W.2d 575, 136 A.L.R. 626 and others. In applying the above rule to our own case we would have to say the second contract, which recognized the prior deed as valid and effective, operated as a complete ratification and validation of the original deed. Accordingly, appellant's first point is overruled.

In her second point appellant complains of error on the part of the trial court in permitting the jury to have appellant's deposition in the jury room. Rule 213, T.R.C.P., provides:

"Depositions may be read in evidence upon the trial of any suit in which they are taken, subject to all legal exceptions which might have been made to the interrogatories and answers, were the witness personally present before the court giving evidence."

Rule 281, T.R.C.P., provides:

"The jury may take with them in their retirement the charges and in-structions, general or special, which were given and read to them, and any written evidence, except the depositions of witnesses, but shall not take with them any special charges which have been refused. Where part only of a paper has been read in evidence, the jury shall not take the same with them, unless the part so read to them is detached from that which was excluded."

Concerning the use of the deposition during the trial the statement of facts shows the following:

"Mr. Martin: Well, at this time we're going to offer in evidence the deposition of Myrtle B. Sowell Fenn.

"Mr. Monning: We certainly have no—unless it burdens the record—but I don't, we don't object to your using it. That is just fine, if you want to read it.

"Mr. Martin: Have you got the original?

"Mr. Monning: I would rather have the original, if we could.

"The Court: Why don't you just read from a copy. All right. Do you want the witness on the stand while you are presenting the deposition. If you are merely reading the deposition, of course, there is no point in keeping her. * * *

"Mr. Martin: I may read a little of it to her, Judge, but we will introduce the entire deposition.

"The Court: All right. Go ahead."

Included in the Index to the statement of facts is the following: "The offer of the deposition, p. 375." That is the page number where counsel for appellant said, "Well, at this time we are going to offer in evidence the deposition of Myrtle B. Sowell Fenn. * * * I may read a little of it to her, Judge, but we will introduce the entire deposition."

Following the above procedure and immediately after appellant rested her case appellee requested that the deposition, which counsel (referring to appellant's counsel) asked and demanded the introduction of as a part of his case be read in evidence and offered it as a judicial admission on the part of plaintiff. The court refused that request, to which Mr. Monning, Jr., replied, " * * * But I believe the record will reflect that about 11:15 this morning Judge Martin stood up and announced that he offered the entire deposition. * * *" The court replied, "* * * It is in evidence and if you want to read it you may do so."

Later in the trial appellee started to read a part of the deposition and the attorney for appellant objected, saying, "I believe in the interest of time that we object to that *since the entire deposition is now in evidence.*" (Emphasis added.) Since much of it had not been read at that time the entire deposition could not have been in evidence unless it had been introduced in its entirety. Shortly thereafter he withdrew his objections and counsel for appellee read parts of it to the jury. However, there is not anything we can find in the record later indicating counsel for appellant had not tendered in evidence the deposition in its entirety. In fact, the transcript reveals that the court qualified appellant's bill of exception to permitting the jury, at their request, to have the deposition in the jury room with them. In qualifying the bill the court said, " * * * her deposition formerly taken was offered in evidence in its entirety by her attorney * * * and said deposition in its entirety was received and admitted in evidence without objection. * * * Counsel for both sides had stated to the Court in the presence of the jury that the entire deposition was in evidence, but much of the deposition had not been read to the jury and was not read to the jury at any time. Such being the situation, when the jury, after they had retired to consider their verdict, asked that this *depo* be sent to them, the court directed the bailiff to take it to them, and it was done."

█ Of course, the proper method of placing before the jury the deposition of a witness is for one person to read the question and another the answer, which is customarily done by the attorneys. But we know of no rule preventing the introduction of a complete deposition as one piece of evidence where such procedure is not objected to, as in this case. Appellant having offered the entire deposition and read only excerpts from it ("Mr. Martin: I may read a little of it to her, Judge, but we will introduce the entire deposition,"), we believe she is not now in position to complain that the jury had the benefit of the remainder of it.

█ In her reply brief appellant correctly states that it is a fundamental principle of law that if the Statement of Facts and the Bill of Exception are in conflict that the Bill of Exception controls. However, we find no material difference in the Statement of Facts and the particular Bill of Exception, as qualified by the court. We are bound by the qualification, as is appellant, she having brought it forward to us in the transcript without any objection to the qualification. The Bill of Exception, as qualified, binds the record to the fact that appellant offered the deposition in evidence in its entirety and that the deposition in its entirety was received and admitted in evidence without objection.

█ Under the cases construing Rule 281 we believe it may be said that the taking into the jury room of a deposition which has already been read in evidence is error because it would give undue emphasis to the testimony in the deposition over other testimony heard in the court room. Butler v. Abilene Mutual Life Insurance Association, Tex.Civ.App., 108 S.W.2d 972. Undoubtedly that was the principle purpose for adopting Rule 281. Surely the party offering it in evidence could not be heard now to complain because testimony

she had herself offered had received emphasis over other testimony. But even if it might be said from the record in this case that it was error for the trial court to permit the jury to have the deposition in the jury room, under Rule 434 this court would have no authority to reverse the case on that ground unless we are of the opinion that the error complained of amounted to such a denial of the rights of the appellant as that it was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. Walker v. Texas Employers' Insurance Association, Tex., 291 S.W.2d 298; Cruse v. Daniels, Tex.Civ.App., 293 S.W.2d 616; Shadownes v. Shadownes, Tex.Civ. App., 271 S.W.2d 165; Cloud v. Zellers, Tex., 309 S.W.2d 806. This court not being of such opinion appellant's second point is overruled.

■ In Appellant's third point she assigns as error the submission by the trial court of a special issue inquiring whether a will executed by her was executed with the intent to ratify the correction deed. We see no particular purpose accomplished in the trial court having submitted Special Issue No. 13 making such inquiry. However, it was merely cumulative and if it was error, it was a harmless error because the trial court had already submitted issues inquiring if appellant executed the correction deed and second contract, if she was mentally incapacitated at the times to the extent that she was not able to understand and comprehend the nature and effect of her actions and if at the times she was acting under mental duress by Howard E. Boxwell. The second contract correctly described the property as having been conveyed on July 21, 1955. The deed recited it was given to correct the original deed, its execution was proved by the secretary, Mrs. Redden, there was sufficient evidence, if believed by the jury, to show she was of sufficient mental capacity at the times to execute the instruments and that she was not at the times acting under mental duress

by Howard E. Boxwell. Even if it might be said that Special Issue No. 13 was immaterial and just burdened the record, since it did not have any bearing on the results of the case it was harmless error. 41–B Tex.Jur., Sec. 412, page 506 and cases therein cited. There was sufficient evidence to submit the issues complained about in point three. What we have already said in discussing the other points disposes of the other complaints made in point three and the same is overruled. What we have already said in discussing the other points also disposes of point four, which is overruled.

■ Points five, six, seven and eight go to the questions of the insufficiency of the evidence to support the jury findings to the effect that appellant was not caused to sign and acknowledge the correction deed and the second contract by the exercise of undue influence exerted on her by Howard E. Boxwell. When the entire record is examined we would have to say these points are not well taken. Appellant herself carried the burden in the issues and the jury simply answered, "We do not find" she was caused to sign and acknowledge the instruments because of the exercise of undue influence on her by Howard E. Boxwell. There is ample testimony to support the answers.

Appellant contends in effect that appellee, during appellant's sorrow in the loss of her son, took advantage of every opportunity to further the good will of appellant toward him to his advantage. If the good will acquired at the time resulted in the deeds and contracts in controversy it was not without considerable obligation on his part. He purchased the cemetery plot at a cost of $1,539 he agreed to purchase in the first contract. He has obligated himself on a note to pay back $10,500 borrowed on the hotel. Whether appellant lives one day or ten years the obligation is Boxwell's to pay, and the testimony shows he has regularly paid the monthly installments of $113 each. He has as-

**548**

signed to appellant one-half interest in a $23,500 note secured by a second lien on 544.13 acres of irrigated land in Oldham County that the testimony shows sold a number of years ago for more than fifty thousand dollars, which has had two irrigation wells added to it since that time and which is worth, according to the record, from $250 to $300 per acre. The first lien on the land is only approximately ten thousand dollars, so there is not any question but that the note is well secured. The record shows appellant and her husband, at the time of the trial, had already personally notified the makers of the note that they own one-half interest in it and the principal and interest should be paid to them. Appellee is also under contract to pay appellant's step-grandson, Roy M. Lusk, "who has threatened to sue party of the first part for sum of $4,372.98, which amount such stepson claims first party owes him for defending and auditing her income tax records, or whatever amount has to be paid Lusk in cancellation of such claim." The record shows that since the contract was made Lusk has taken a judgment for $11,000 against appellant on the claim for accounting services. Appellee is also under contract to furnish a $7,000 casket and funeral service to appellant at her death. The testimony shows the hotel property, at the time of the trial was worth between sixty thousand and sixty five thousand dollars, that its rental value was approximately $250 per month and that a 66 year old woman's future life expectancy is 11.01 years. According to her testimony she was 69 at the time of the trial in July of 1957, so her life expectancy was slightly less than the 11.01 figure.

 The court submitted to the jury, after more than 600 pages of testimony, issues inquiring if appellee overreached or unduly influenced her in the execution of the instruments and if at said times she was not of sufficient mental capacity to understand the nature and effect of her acts in executing said instrument and the jury answered all issues on every question submitted against appellant's contention. It was the prerogative of the jury to believe or reject any part or all of the testimony offered by either party. To test the sufficiency of the evidence to determine if it supports the jury findings we must give credence only to the evidence and circumstances favorable to the findings and disregard all evidence to the contrary, indulging every legitimate conclusion tending to uphold such findings. Truelove v. Truelove, Tex.Civ.App., 266 S.W.2d 491; City of Austin v. Salazar, Tex.Civ.App., 241 S.W.2d 445; Banks v. Collins, 152 Tex. 265, 257 S.W.2d 97; Barrick v. Gillette, Tex.Civ.App., 187 S.W.2d 683.

When the rules announced in the cases just cited are applied to the instant case we have to say the testimony was sufficient to support the answers of the jury to the issues submitted.

Accordingly, appellant's points are all overruled and the judgment of the trial court is in all things affirmed.