**David PORRAS and Joe Davis, Appellants,**

**v.**

**R. N. HILLIN et ux., Appellees.**

**No. 6056.**

Court of Civil Appeals of Texas.

El Paso.

Dec. 3, 1969.

Rehearing Denied Dec. 31, 1969.

---

William B. Smith, Midland, for appellants.

Glenn Aaron and James E. Perry, San Angelo, for appellees.

## OPINION

WARD, Justice.

This case involves the breach of an oral contract for the construction, remodeling and redecoration of the home of the appellees by the construction and decorating firm owned by the appellants. The case was submitted to a jury, and on answers to the issues, judgment was entered in favor of the home owners for $5,173.65.

The final outcome of the case reflects that the main dispute between the parties centered on conflicting versions of the contract as to the purchase of items of furniture and furnishings for the remodeled home. It was the appellees' testimony that their contract with the appellants, who were also in the home decorating business, called for the appellants to secure certain items of furniture and furnishings for a price of the appellants' actual cost, plus a fee of ten per cent of such cost, plus freight charges and sales tax; the appellants contending that the agreement varied; and, as an example, that as to items to be obtained from Jack Housman of Dallas, a wholesaler, the cost to the home owners was to be at one-half the price listed in the Jack Housman catalogue, plus a fee of ten per cent of such price, plus freight and tax; this being at a substantially higher figure than claimed by the home owners. Items purchased through other suppliers were also to be at higher prices, which we will not discuss, as they have no value to the points in this appeal. The home owners paid to the decorators approximately $5,000.00 for the purchase of various items of furniture and furnishings, and admittedly only a few small items were delivered to the appellees by the appellants, the appellants refusing to deliver the balance until they were paid in full in accordance with their understanding of the contract. The jury accepted the home owners' version of the agreement and found that the sum of $4,173.65 would compensate the appellees for the remaining items of furniture and furnishings which they had paid for, but which had not been delivered to them by the appellants.

The home owners were furnished two invoices by the appellants from Jack Housman, being plaintiffs' Exhibits 5 and 6. The home owners testified that the appellants had represented that the prices shown on the two invoices were the actual prices that Jack Housman had charged and collected from the appellants. The prices relating to the items of furniture and furnishings on the invoices given to the home owners by the appellants on the Jack Housman purchases were considerably higher than the amounts actually paid for these items by the appellants to Jack Housman. These Jack Housman invoice prices were even higher than called for in the version of the contract contended for by the appellants. The appellants' explanation for

this discrepancy was very simple: that the appellees had contacted them and told the appellants that they needed some "padded" invoices so that they could obtain a higher loan at their bank to finance the furniture purchases, and that this the appellants had obligingly furnished through the aid of Jack Housman. The jury having accepted the version of the home owners as to the terms of the contract likewise determined that the appellants misrepresented to the home owners that the prices on the invoices submitted to them from the suppliers of the items of furniture and furnishings were the actual costs paid by the appellants for such items, and by other issues established a claim of fraud based on these misrepresentations. This was the basis for the recovery of the $4,173.65.

■ The deposition of Jack Housman was taken by the appellees on direct interrogatories which were not crossed by the appellants. This deposition shows that Jack Housman sold to the appellants the Housman items at a wholesale price of $2,583.-00, which had been paid by the appellants. The two invoices setting forth the specific items of furniture and prices were attached to the deposition in the form of exhibits. In his deposition Mr. Housman also testified that he did not have a record of the two "padded" invoices. No other inquiry was made of him as to the so-called "padded" invoice transaction. At the trial, the appellees introduced the deposition by reading it in full and then formally offered into evidence, as plaintiff's Exhibit 19, the copy of the interrogatories to Jack Housman; and, as plaintiff's Exhibit 20, the original of the answers to the interrogatories to Jack Housman, together with the exhibits attached thereto, being the invoices. No objection was made by the appellees to this offer of the deposition into evidence, though objection was made to the introduction of the two invoices. The objection as to the invoices was properly overruled.

After the jury had retired, it requested that the exhibits be sent to the jury room.

Exhibits 19 and 20 were sent to the jury room, over the appellants' objection that the depositions should not be sent to the jury room.

■ The invoices attached to the depositions and which were offered into evidence, should have been detached from the depositions, and the jury permitted to have them. This would have permitted the jury to have the exhibits which were properly offered into evidence without the objectionable deposition. 3 McDonald Texas Civil Practice, Sec. 14.08. As do the parties to this appeal, we assume that sending the deposition to the jury room was error under this record. Rule 281, Texas Rules of Civil Procedure; Fenn v. Boxwell, 312 S.W.2d 536 (Tex.Civ.App., Amarillo, wr. ref. n. r. e.). But was the error material or did injury probably result to the complaining party such as to call for a reversal? Rule 434, Rule 327, T.R.C.P.; Willis v. Goodrum, 360 S.W.2d 182 (Tex. Civ.App., San Antonio 1962); Pope, Jury Misconduct and Harm, 12 Baylor Law Review 355 (1960). Having read the record as a whole and particularly the testimony of Mr. Porras, the appellant who handled the transaction, we fail to see where there was any injury to the appellants in permitting the depositions to go to the jury. The important part of the deposition was the exhibits attached, being the invoices. The juror who testified on the motion for new trial indicated that the jurors were concerned with the invoices which were attached to the deposition. As stated, these could have gone to the jury as separate exhibits. Nowhere in the testimony of the appellants is any attack made on the prices on the invoices charged by Jack Housman to the appellants. The whole dispute between the parties as to these items was not as to what was charged the appellants by Jack Housman, but as to what the appellants were entitled to charge the appellees under their contract. The appellants' first point is overruled, as the error was harmless.

The appellants next complain of the following matter. In his jury argument the

attorney for the appellants told the jury that, if they forgot any figures, they were entitled to have the court reporter read the figures and prices back to them. Upon the conclusion of all arguments the trial judge orally stated to the jury the following:

"It was mentioned in one of the attorney's arguments that if you did not know what some sum was or something to that effect you could have the Court reporter read it back to you. Let the Court explain to you that where the jury is in doubt about some matter, you must, if you want to direct a question to the Court, it must be in writing and signed by the foreman setting out specifically what instance that you are concerned about of which there may be a difference of opinion; in other words, you cannot send in a question, 'We would like to hear the full testimony of Mr. Porras read back to the jury.' If you are concerned about some matter, the Court might tell you that it will take considerable time for the Court reporter to find the specific part you are asking for and get it in shape to read to the jury. The Court makes this explanation to you. So please retire to the jury room. * * *"

■ The appellants complain that the remarks were a comment on the weight of the evidence; that they were not in writing, and the appellants had not had a fair opportunity to object to the form they were in. Rules 271, 272, 275, 286 and 287, T. R.C.P. However, under Rule 434 we are at a loss to see how the error complained of amounted to a denial of the rights of the appellants as were reasonably calculated to cause and probably did cause the rendition of an improper judgment. Ross v. Texas Employers' Ins. Ass'n., 153 Tex. 276, 267 S. W.2d 541 (1954). Further, Mr. Porras, one of the appellants, certainly testified fully and completely as to his version of the case, and to call on the jury to examine his figures would be favorable, if anything, to the appellants. Further, when appellants' counsel told the jury that they had the right to have testimony re-read to them, surely the trial judge, in his discretion, had the right to make a more complete explanation of Rule 287, even though the correct method would have been to have put the instruction in writing. This second point is overruled.

■ The appellants next complain of the action of the trial judge, when a request was made by the jury that some of the testimony of Mr. Porras be read back to them. They complain that he failed to give the court reporter sufficient time to find all of the requested testimony and prevented the court reporter from reading all of the testimony which was actually found. The request from the jury was that they desired to hear Mr. Porras' testimony under direct examination as to the reasons he had prepared the so-called "padded" invoices. The testimony giving the reason as to the Jack Housman invoices was read to the jury. At this time the trial judge asked the foreman of the jury if this was what he desired to hear, and the foreman indicating affirmatively, the jury was retired. Possibly another portion relating to the same matter was not read to the jury, as was none of the testimony of another supplier. We feel that when the court determined from the foreman that this was a sufficient reading back of the testimony, he was within his discretion in retiring the jury and refusing to have the balance read. By the very nature of the situation that arises in the application of the rule, the judge must be given broad discretion, and it was not abused in this instance. Aetna Casualty and Surety Company v. Scott, 423 S.W.2d 351 (Tex.Civ.App., Houston 1968, no writ). This point is likewise overruled.

We have considered each of the remaining points of the appellants and finding that they are without merit, they are all overruled. The judgment of the trial court is affirmed.